UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

FLYING STAR CAFES, INC.,                           Case No. 15-10182 t11

     Debtor.

NM ENTERPRISES, INC.
d/b/a NM BAKERY SERVICE COMPANY,

     Plaintiff,

v.                                                 Adv. No. 16-1060-t

CLYDE HARRINGTON and
DONNA SCHMIDT,

     Defendants.

## **OPINION**

Before the Court is Defendants' joint motion to dismiss this § 510(b)[1] subordination proceeding for lack of standing. The Court concludes that the Plaintiff did not have standing to bring the action in the first instance, and further concludes that the plan confirmed in this case gave the reorganized debtor the sole right to pursue such actions.

## I.      FACTS

For the purpose of ruling on the motion to dismiss, the Court finds the following:[2]

Debtor filed this chapter 11 case on January 30, 2015. Each Defendant filed a proof of claim on March 30, 2015. Schmidt's claim was for $2,169,849.96 to $2,669,849.96; Harrington's was for $3,633,085.34 to $4,633,085.34.

---

[1] Unless otherwise noted, all statutory references refer to 11 U.S.C.
[2] The findings are based in part on taking judicial notice of the dockets in the main case and this proceeding.

Debtor objected to both claims on February 10, 2016. Two days later, it filed an adversary proceeding seeking to subordinate Defendants'' claims under § 510(b).[3] After substantial litigation, on July 19, 2016 Debtor filed a motion to settle all disputes with Defendants. The proposed settlement involved payments by third parties to Defendants and required Defendants to file amended proofs of claims as follows:

Harrington:   $381,909
Schmidt:        229,614.

In return, Debtor agreed to dismiss the adversary proceeding and withdraw its claim objections.

The Court approved the settlement on August 23, 2016. At the request of the parties, the order made clear that third parties were not precluded from objecting to Defendants' amended proofs of claim. Similarly, the adversary proceeding dismissal order was "without prejudice to any other party in interest." Defendants filed amended proofs of claim, as agreed, on August 25, 2016.

About five weeks later Plaintiff objected to Defendants' amended proofs of claim. Soon thereafter Plaintiff commenced this § 510(b) proceeding against Defendants.

Debtor's owners filed a plan of reorganization on November 14, 2016 (the "Plan"), which provides in part:

### DEFINITIONS

**"Disputed Claim"** means a Claim (or portion of a Claim) as to which an objection has been filed and served within the time period set forth herein for doing so, and which objection has not been determined by a Final Order.
…

---

[3] § 510(b) provides: "For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock."

**PROCEDURE FOR RESOLVING DISPUTED CLAIMS**

6.1    Power to Object to, Litigate, and Settle Disputed Claims.  After the Effective Date, the Reorganized Debtor will have the exclusive authority to (i) file objections to Claims . . . and (iii) litigate to final judgment, settle, or withdraw objections to Disputed Claims.

The Plan also has provisions preserving claims and causes of action for the benefit of the reorganized debtor, and requiring Debtor to promptly resolve disputed claims.  The disclosure statement included Defendants' claims in its disclosure of allowed general unsecured claims.

Defendant Schmidt voted in favor of the Plan as a general unsecured creditor.  Her vote was counted when determining that the general unsecured class voted for the Plan.  The Court confirmed the Plan on December 20, 2016, with an effective date of January 17, 2017.

Defendants filed the motion to dismiss for lack of standing on January 31, 2017.  About six weeks later Plaintiff offered to settle the proceeding by, inter alia, taking an assignment of $200,000 of Defendants' claims, and by requiring a token reduction in the claim amount (the "Settlement Offer").

On April 7, 2017, Plaintiff withdrew its claim objections, leaving only the § 510(b) subordination claim.

## II.    DISCUSSION

A.    Standing.

1.    Rule 12(b)(1) or 12(b)(6)?  Defendants challenge Plaintiff's standing, but do not say whether they rely on Rule 12(b)(1) or (b)(6).  *See, e.g. Nordisk Sys., Inc. v. Sirius Computer Sols., Inc.*, 156 F. Supp. 3d 1212, 1215 (D. Or. 2015) (standing challenges may be brought under either Rule 12(b)(1) or (b)(6)).  In the Tenth Circuit, a standing challenge is generally considered an attack on the court's subject matter jurisdiction and treated under Rule 12(b)(1).  *See Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1224-25 (10th Cir. 2012) ("Our court has

repeatedly characterized standing as an element of subject matter jurisdiction"); *Connolly v. City of Houston, Texas (In re Western Integrated Networks, LLC)*, 329 B.R. 334, 337 (Bankr. D. Colo. 2005) ("Standing is a fundamental component of the court's subject matter jurisdiction and is appropriately raised in a motion to dismiss under 12(b)(1)").

The Court will proceed under Rule 12(b)(1), so it will not presume the truthfulness of the complaint's factual allegations, and will consider affidavits and other documents to resolve disputed jurisdictional facts. *See Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995).

2. <u>Article III standing</u>. Article III restricts federal court adjudication to actual cases or controversies. *State of Utah v. Babbitt*, 137 F.3d 1193, 1201 (10th Cir. 1998). To satisfy Article III's standing requirements, a plaintiff must show an injury in fact, causation, and redressability. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

3. <u>Prudential Standing</u>. Prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *The Wilderness Soc. v. Kane County, Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011). The prudential standing doctrine encompasses various limitations, including "the general prohibition on a litigant's raising another person's legal rights." *Id.,* quoting *Allen v. Wright,* 468 U.S. 737, 751 (1984). "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.,* quoting *Warth v. Seldin,* 422 U.S. 490, 499 (1975). Prudential standing is an issue of subject matter jurisdiction. *Wilderness Soc.,* 632 F.3d at 1168; *Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 717 F.3d 189, 194 n.4 (D.C. Cir. 2013) (prudential standing is threshold jurisdictional concept).

4.     <u>Statutory Standing</u>.  Sometimes the right to bring a cause of action is conferred by statute.  In those cases, prudential standing concepts, which are judge-made, take a back seat.  *See, e.g., Lexmark Intern. Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1387-88 (2014)[4] ("we do not ask whether in our judgment Congress *should* have authorized [plaintiff's] suit, but whether Congress in fact did so.") (emphasis in original).

To summarize, the standing analysis after *Lexmark* is:

(1)     Is there Article III standing?

(2)     Is there a statute that confers or denies standing? and

(3)     If there is Article III standing and no statute gives guidance one way or another, should prudential standing concepts be employed to dismiss the cause of action?

5.     <u>The standing requirement is continuous</u>.  Plaintiff argues that standing is measured only at the commencement of the case.  Not so.  Under Article III, statutory, or prudential standing, the requirement that a plaintiff have proper standing is continuous.  *See Friends of the Earth,* 528 U.S. at 189–90 (requisite personal interest must exist when the case begins (standing) must continue throughout (mootness)).

B.     <u>Plaintiff Never Had Standing to Bring § 510(b) Claims</u>.

Many reported decisions discuss § 510(b) actions, but they were all brought by a trustee, debtor in possession, or other estate representative.  There does not appear to be a case involving a single creditor[5] pursuing a § 510(b) claim against another creditor.  The dearth of case law implies that individual creditors lack standing to bring § 510(b) claims.

---

[4] Previously, the Tenth Circuit considered statutory standing within prudential standing. *See, e.g., Wilderness Soc.,* 632 F.3d at 1169, citing *Warth*, 422 U.S. at 500.
[5] In *In re Seaquest*, 579 F.3d 411 (5th Cir. 2009), debtor and two creditors filed a § 510(b) action against another creditor.

In contrast, the case law on whether a creditor may bring an equitable subordination claim under § 510(c)[6] is well developed, and provides a useful analogy. The majority rule is that creditors may only bring § 510(c) actions if their goal is to subordinate another creditor's claim to their own. *See Variable–Parameter Fixture Dev't Corp. v. Comerica Bank–California (In re Morpheus Lights, Inc.)*, 228 B.R. 449, 453 (Bankr. N.D. Cal. 1998); *In re Elrod Holdings Corp.*, 392 B.R. 110, 115 (Bankr. D. Del. 2008) (a secured creditor has standing to seek the equitable subordination of another secured creditor's claim to the extent that it seeks relief for a particularized injury, not an injury incurred by all creditors).[7] A particularized injury means harm that differs from injury suffered by creditors generally. *Black Palm Dev. Corp. v. Barlage*, 2011 WL 4858420, at *4 (W.D.N.C.) (quoting *Elrod Holdings,* 392 B.R. at 115). If the creditor suffered no particularized injury, on the other hand, it has no standing to seek equitable subordination on behalf of creditors generally.

In other words, creditors cannot assert general equitable subordination claims because they belong to the estate. *See In re Morpheus Lights,* 228 B.R. at 453 (general equitable subordination claims are estate property; particularized claims are not). *See also Kalb, Voorhis & Co. v.*

---

[6] "(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may— (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or (2) order any lien securing such a subordinated claim be transferred to the estate."

[7] *See also In re Mayo,* 112 B.R. 607, 651 (Bankr. D. Vt. 1990) (creditor had standing to assert equitable subordination when it sought only to subordinate two other creditors to its own claim); *In re Vitreous Steel Prod. Co.*, 911 F.2d 1223, 1231 (7th Cir. 1990) (creditor had standing to seek equitable subordination because it had interest separate and apart from creditor body as a whole); *In re M. Paolella & Sons, Inc.*, 85 B.R. 965, 973 (Bankr. E.D. Pa. 1988) (creditor had standing where it only sought to subordinate one creditor's claim to its own); *In re Dayton Title Agency, Inc.*, 527 B.R. 289, 298 (Bankr. S.D. Ohio 2015) ("The courts have permitted a single creditor to obtain subordination of a specific claim to its own claim when the requirements of equitable subordination have been met.").

*American Financial Corp.,* 8 F.3d 130 (2d Cir. 1993) (claims that are property of the estate can only be asserted by the trustee or debtor-in-possession); *St. Paul Fire and Marine Ins. Co., Inc. v. PepsiCo., Inc.*, 884 F.2d 688, 700-01 (2d Cir. 1989) (same); *In re Bridge Information Systems, Inc.,* 344 B.R. 587, 594 (E.D. Mo. 2006) (discussing the distinction between "personal" and "general" claims).

The right to pursue claims that benefit creditors generally is reserved for the estate representative. *In re Medomak Canning*, 922 F.2d 895, 902 (1st Cir. 1990) (the trustee is ordinarily the appropriate party to seek equitable subordination on behalf of the estate and unsecured creditors); *Morpheus Lights,* 228 B.R. 449, 454 (Bankr. N. D. Cal. 1998) (trustee, debtor in possession, or creditor committee may bring general equitable subordination action). "This rule is intended to promote the orderly and equitable administration of a bankrupt's estate by preventing individual creditors from pursuing separate actions to the detriment of other creditors and of the estate as a whole." *Solow v. Stone*, 994 F. Supp. 173, 178 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998).[8]

Moreover, in § 510(b) there is no language allowing "any party in interest" to bring the claim. This is in contrast to, for example, § 502(a).[9] Although § 1109 gives any party in interest

_____

[8] Courts have allowed creditors to bring "general" equitable subordination claims if the estate representative has refused to pursue the litigation after demand, the refusal is unjustified, and the claim would benefit the estate. 7 Collier on Bankruptcy, ¶ 1109.05[2][a] (Alan N. Resnick & Henry J. Somme reds., 16th ed.), *citing Scott v. National Century Financial Enterprises, Inc*. (*In re Baltimore Emergency Services II, Corp.*), 432 F.3d 557, 560 (4th Cir. 2005). *See also Black Palm Development Corp. v. Barlage*, 2011 WL 4858420 (W.D.N.C. 2011) (in chapter 7, unsecured creditor may assert subordination claim where trustee has refused to do so and court grants an unsecured creditor leave). Here, Debtor brought a subordination action and settled it. The unsecured creditors committee reviewed whether to bring its own claim and decided not to. Plaintiff did not ask for permission to pursue the claim on behalf of the estate.

[9] "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest . . . objects."

the right to raise and be heard on any issue in a chapter 11 case, the right does not extend to asserting estate claims. *See, e.g., Hartford Underwriters Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 7-8 (2000) (had Congress meant § 506(c) claims to be widely available, it would have used the phrase "party in interest" such as used in § 502(a)); 7 Collier on Bankruptcy (16th ed.), ¶ 1109.05 ("section 1109 does not vest a party in interest with the right to usurp the trustee's role as representative of the estate with respect to the initiation of certain types of litigation that belong to the estate and that the Code has assigned to the trustee to pursue").

The Court concludes that individual creditors generally may not bring § 510(b) actions against other creditors. Construing §§ 323, 510, 541, 1107, and 1109, the Court concludes that § 510(b) actions are "general" claims that are owned by the estate, not "personal" claims owned by individual creditors. Section 510(b) claims therefore must be asserted by the estate representative. Plaintiff lacked standing to bring this proceeding.[10]

C.    Under the Plan, The Reorganized Debtor Was Given Exclusive Authority To Pursue § 510(b) Claims.

Defendants argue the Plan unambiguously grants the Reorganized Debtor the exclusive authority to pursue the § 510(b) subordination claims post-confirmation. The Court concludes that the Plan language is in fact ambiguous. Nevertheless, the Court agrees that the Plan should be construed as Defendant urges.

1.    General construction rules. A confirmed plan generally is interpreted according to the rules governing the interpretation of contracts. *See Miller v. United States,* 363 F.3d 999, 1004 (9th Cir. 2004) (confirmed plan is akin to a contract and "must be interpreted according to the rules

---

[10] Specifically, Plaintiff has Article III standing, but is denied standing by the relevant statute, i.e. the Code. Alternatively, Plaintiff lacks prudential standing.

governing the interpretation of contracts."); *Connolly v. City of Houston (In re Western Integrated Networks, LLC),* 322 B.R. 156, 160-61 (Bankr. D. Colo. 2005) (chapter 11 plan is a contract that must be interpreted according to the general rules of contract interpretation); *In re K.D. Co., Inc.,* 254 B.R. 480, 490 (10th Cir. BAP 2000) (confirmed plan has some indicia of a contract).

A contract is ambiguous when it is reasonably susceptible to multiple interpretations. *Mark V, Inc. v. Mellekas,* 845 P.2d 1232, 1235-36 (N.M. 1993).

2. <u>The Plan's use of "object to" and "objection" is ambiguous</u>. The Plan defines a "Disputed Claim" as one to which an objection has been filed, and then gives the Reorganized Debtor the exclusive right to object to claims or litigate, settle, or withdraw objections to Disputed Claims. "Objections" could reasonably be interpreted to mean § 502 claim objections only, but also could be read more broadly to include any dispute over a claim, including § 510(b) subordination.[11] The Court concludes the Plan is ambiguous on its face.

Parties may present parol evidence to aid the Court in interpreting the contract. *Mark V, Inc.,* 845 P.2d at 1235-36. The only such evidence submitted was the Settlement Offer. The Court will resolve the ambiguity by considering the Settlement Offer and "by interpreting the contract using accepted cannons of contract construction and traditional rules of grammar and punctuation." *Id.* at 1235-36.

---

[11] Subordination concerns the distribution priority of allowed claims, while § 502 deals with the allowability of a claim. *See In re USA Commercial Mortg. Co.*, 377 B.R. 608, 617 (9th Cir. BAP 2007) (a § 502 objection seeks a ruling that the claim is not allowable by law, while a subordination action presupposes that the claim is allowed); *In re GEX Kentucky, Inc.*, 100 B.R. 887, 891 (Bankr. N.D. Ohio 1988) (subordination deals with distribution and classification, not allowance). Subordination claims must be brought by adversary proceeding, while claim objections are contested matters. *See* FRBP 7001(8) (a proceeding to subordinate a claim must be brought in an adversary proceeding).

3.    The Plan should be interpreted as consistent with the Code.  Ambiguous plans should be interpreted to comply with the Bankruptcy Code.  *See In re Forklift LP Corp.*, 363 B.R. 388, 394, 398 (Bankr. D. Del. 2007) (unless a plan clearly takes them away, creditors are entitled to rely on rights granted by the Bankruptcy Code); *In re Jankins*, 184 B.R. 488, 492 (Bankr. E.D. Va. 1995) (as a matter of policy, ambiguous provision should be construed to comport with Bankruptcy Code); *In re Monclova Care Ctr., Inc.,* 254 B.R. 167, 173 (Bankr. N.D. Ohio 2000) (when "multiple interpretations of a plan are possible, courts should favor an interpretation that is consistent with the Bankruptcy Code over one that contravenes it.").  A broad interpretation of "objection" is more consistent with the Bankruptcy Code because subordination actions are "general" claims that are owned, and should be pursued, by the estate.

4.    A broad interpretation is consistent with generally prevailing meaning.  Ambiguous terms should be construed in a manner consistent with their generally prevailing meaning.  *See* Restatement (Second) of Contracts § 202(3) (court should interpret language with its "generally prevailing meaning").  The general meaning of object is "an adverse reason raised to oppose a matter or proceeding."  *In re Outdoor Sports Headquarters*, *Inc.*, 168 B.R. 177, 183 (Bankr. S.D. Ohio. 1994) (citing *Black's Law Dictionary*).  Construing the Plan's use of "object" in that general sense would include subordination claims as well as § 502 claim objections, because both are in opposition to the claim, and both typically result in actual or *de facto* disallowance.

5.    The Plan should be interpreted as a whole.  "A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together."  Restatement (Second) of Contracts § 202(2).  A number of provisions in the Plan and accompanying Disclosure Statement are harmonized if the term "objection" is interpreted broadly.  First, the Plan makes clear that Debtor committed to resolving disputed claims quickly (5.10; 6.4). The Plan preserved

all estate claims, of any kind or nature, known or unknown (5.14). The Plan states that the Reorganized Debtor has the right to pursue all estate claims (5.14(b)), and the right to pursue until resolved all disputed claims. Defendants' claims were shown as allowed, general unsecured claims in the Disclosure Statement. Schmidt's vote in favor of the Plan was counted when determined whether general unsecured creditors voted in favor of the Plan. Construing the term "objection" narrowly would be inconsistent with the foregoing Plan provisions and facts; construing the term broadly would harmonize them.

6.    <u>Multiplicity of Litigation</u>. If the Plan were construed to allow any creditor to bring § 510(b) subordination actions against any other creditor, targets (like Defendants) could be exposed to multiple actions, possibly in seriatim. Fairness and judicial economy are much better served by a Plan interpretation that gives one party, the estate representative, the sole right to bring § 510(b) claims.

7.    <u>Case Law</u>. One case has addressed similar issues and come to the same conclusion. In *In re Worldwide Direct, Inc.*, 280 B.R. 819, 822-23 (Bankr. D. Del. 2002), the court concluded that the following disclosure statement language: "the Debtors and the Committee currently are investigating all of such Claims and, at this time, dispute and object to them in their entirety," was sufficient to reserve § 510(b) claims against a creditor. Is so ruling, the court held that § 510(b) subordination is "an objection based on the proper priority of payment of a claim"). In *In re Outdoor Sports Headquarters, Inc.*, 168 B.R. 177, 183 (Bankr. S.D. Ohio. 1994), the court construed "objection" as used in the plan in its general sense and concluded that the term encompassed subordination actions. *See also In re Melon Produce, Inc.*, 162 B.R. 386, 388

(Bankr. D. Mass. 1993) (agreement not to object subsumes that he would not seek to equitably subordinate).12

8.    <u>The Settlement Offer</u>.  Plaintiff's Settlement Offer shows why a broad reading of "objection" is indicated.  Plaintiff may have commenced this proceeding in good faith, and may have proposed to settle it in good faith, but the Settlement Offer clearly shows that Plaintiff was acting in its own interests, not those of creditors generally.  Even though a § 510(b) action is a "general" claim that is supposed to benefit all creditors pro rata, Plaintiff sought to use the action exclusively for its own benefit.  The inherent conflict of interest illustrates why an estate representative should be the only party with standing to pursue § 510(b) actions.

## III.   <u>CONCLUSION</u>

Plaintiff did not have standing to bring this § 510(b) subordination proceeding. Confirmation of the Plan made doubly clear that only an estate representative could pursue such claims.  Defendants' motion to dismiss therefore will be granted.  The Court will enter a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 5, 2017
Copies to: Counsel of record

---

12 Other cases have construed "objection" more narrowly albeit in different circumstances.  For example, in *In re Gordon Sel-Way*, 1996 WL 571652 (E.D. Mich. 1996), the district court held that a plan provision giving the debtor a deadline to object to claims did not bar an equitable subordination action filed after the deadline.  1996 WL 571652, at *2.  In *In re County of Orange*, 219 B.R. 543-559-60 (Bankr. C.D. Cal. 1997), the court held that claim reservation language reserving all "defenses, counterclaims and/or rights of setoff or recoupment" did not reserve § 510(b) subordination claims.